## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
## EASTERN DIVISION

| | |
|---|---|
| TIWANA FOX, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 4:11CV00946 LMB |
| ) | |
| MICHAEL J. ASTRUE, ) | |
| **Commissioner of Social Security,** ) | |
| ) | |
| Defendant. ) | |

### MEMORANDUM

This is an action under 42 U.S.C. § 405(g) for judicial review of defendant's final decision denying the application of Tiwana Fox for Supplemental Security Income under Title XVI of the Social Security Act. This case has been assigned to the undersigned United States Magistrate Judge pursuant to the Civil Justice Reform Act and is being heard by consent of the parties. See 28 U.S.C. § 636(c). Plaintiff filed a Brief in support of the Complaint. (Doc. No. 20). Defendant filed a Brief in Support of the Answer. (Doc. No. 21).

### Procedural History

On October 31, 2008, plaintiff filed her application for benefits, claiming that she became unable to work due to her disabling condition on October 17, 2008. (Tr. 14). This claim was denied initially, and following an administrative hearing, plaintiff's claim was denied in a written opinion by an Administrative Law Judge (ALJ), dated July 13, 2010. (Tr. 41-45, 14-21). Plaintiff then filed a request for review of the ALJ's decision with the Appeals Council of the Social Security Administration (SSA), which was denied on April 19, 2011. (Tr. 1-6). Thus, the

decision of the ALJ stands as the final decision of the Commissioner. See 20 C.F.R. §§ 404.981, 416.1481.

## Evidence Before the ALJ

**A.     ALJ Hearing**

Plaintiff's administrative hearing was held on May 14, 2010. (Tr. 27). Plaintiff was present and was represented by counsel. (Id.). Also present was vocational expert Thomas Dunlevy. (Id.).

Plaintiff's attorney made an opening statement, in which he indicated that plaintiff suffered from uncontrolled diabetes and arthritis in her knees and hands. (Tr. 28). Plaintiff's attorney stated that plaintiff experienced fatigue, excessive thirst, and excessive urination as a result of the diabetes. (Id.). Plaintiff's attorney stated that plaintiff experienced significant knee pain as a result of the arthritis. (Id.).

The ALJ examined plaintiff, who testified that she completed eleventh grade. (Tr. 29). Plaintiff stated that she was unable to work due to the arthritis in her knees, high blood pressure, and diabetes. (Id.).

Plaintiff testified that she moved in with her niece because plaintiff was sick. (Id.). Plaintiff stated that she did not perform any housework during the day due to her knee pain and the arthritis in her hands. (Tr. 30). Plaintiff stated that she had difficulty gripping due to the arthritis in her hands. (Id.). Plaintiff testified that her twenty-seven-year-old niece did all of the housework. (Id.). Plaintiff stated that her niece had a six-year-old son who lived with them. (Id.).

Plaintiff testified that she received medical treatment at Barnes Hospital and Grace Hill.

(Id.). Plaintiff stated that Dr. Janet Judal at Grace Hill was treating her for her hand problems. (Id.). Plaintiff testified that she last saw Dr. Judal on May 12, 2010. (Id.). Plaintiff stated that she went to Grace Hill every month for a checkup regarding her diabetes and blood pressure. (Id.). Plaintiff testified that she had degenerative joint disease[1] in her right hand. (Tr. 31).

Plaintiff stated that she helped her nephew with his homework. (Id.). Plaintiff testified that she had a driver's license but did not own a car. (Id.). Plaintiff stated that she went for walks. (Tr. 32). Plaintiff testified that she also walked to the store, which was located one block away from her home, to buy groceries. (Id.). Plaintiff stated that she experienced shortness of breath after walking to the store. (Id.).

Plaintiff's attorney then examined plaintiff, who testified that she slept during the day because she was unable to sleep at night due to pain in her legs. (Id.). Plaintiff stated that she went to sleep after taking her insulin at around 9:00 a.m., and slept until about 5:00 p.m. (Id.).

Plaintiff testified that she had neuropathy[2] in her legs in addition to the arthritis. (Tr. 33). Plaintiff stated that elevating her legs eased the discomfort of the neuropathy. (Id.).

Plaintiff testified that she used the bathroom frequently due to her diabetes. (Id.). Plaintiff stated that her average blood sugar reading for the prior month was 337. (Id.). Plaintiff testified that her doctor was concerned about this number and increased her insulin. (Id.).

The ALJ examined the vocational expert, Mr. Dunlevy. The ALJ asked Mr. Dunlevy to

---

[1]Degenerative joint disease, or osteoarthritis, is characterized by erosion of articular cartilage, either primary or secondary to trauma or other conditions, which becomes soft, frayed, and thinned with eburnation of subchondral bone and outgrowths of marginal osteophytes; pain and loss of function result. Stedman's Medical Dictionary, 1388 (28th Ed. 2006).

[2]A classic term for any disorder affecting any segment of the nervous system. Stedman's at 1313.

assume a hypothetical claimant with plaintiff's characteristics and the following limitations: occasionally lift up to twenty pounds; frequently lift ten pounds or less; occasionally climb stairs or ramps; no climbing of ladders, ropes, or scaffolds; occasionally balance, stoop, and kneel; and no crouching or crawling. (Tr. 35). Mr. Dunlevy testified that the hypothetical claimant would be capable of performing plaintiff's past work as a cashier, as actually performed and as in the DOT; and plaintiff's position as an assembly machine tender as generally performed, but not as actually performed. (Id.). Mr. Dunlevy testified that the individual would also be capable of performing other light work, such as that of assembler (10,000 such positions in Missouri); laundry folder (2,000 such positions); and cafeteria attendant (3,000 such positions). (Tr. 36).

The ALJ next asked Mr. Dunlevy to assume a hypothetical claimant who is limited to the full range of sedentary work. (Id.). Mr. Dunlevy testified that the individual could perform work as an assembler (4,000 such positions); visual inspector (2,000 such positions); and sorter (3,000 such positions). (Tr. 37).

The ALJ then asked Mr. Dunlevy to assume a hypothetical claimant who is limited to working four hours out of an eight-hour day, with a need to take frequent breaks due to fatigue or for bathroom breaks, and who would be absent more than two times per month. (Id.). Mr. Dunlevy testified that such an individual would not be competitively employable. (Id.). Mr. Dunlevy stated that absenteeism should not exceed ten days annually, or one day monthly for three consecutive months. (Id.).

B.      **Relevant Medical Records**

The record reveals that plaintiff received treatment at Grace Hill Neighborhood Health Centers ("Grace Hill") from March 2006 through the date of the hearing for various complaints,

including abdominal pain, allergic reactions, and blood sugar issues. (Tr. 191-97). On December 13, 2006, plaintiff complained of decreased appetite, poor sleep, crying spells, and anhedonia. (Tr. 198). Ankle edema was noted on examination. (Tr. 200). Plaintiff was diagnosed with diabetes mellitus,[3] hypertension, increased lipids, and depression. (Tr. 201). Plaintiff was prescribed medication for her diabetes and hypertension, and was prescribed Lexapro[4] for her depression. (Id.). On January 10, 2007, plaintiff reported that the Lexapro "helped a whole lot," with her sleep and mood. (Tr. 202). Plaintiff's physical examination revealed ankle edema. (Tr. 203). On April 9, 2007, plaintiff complained of right elbow pain. (Tr. 206). Ankle edema was again noted on examination. (Tr. 207). Plaintiff was prescribed Naproxen.[5] (Tr. 208). On April 23, 2007, plaintiff reported that the Naproxen relieved her right elbow pain but made her sleepy. (Tr. 209). On May 21, 2007, plaintiff followed up regarding her blood sugar levels, ankle edema, and an allergic reaction to hair dye. (Tr. 210). Plaintiff presented for follow-up on June 4, 2007, at which time self-management for smoking, obesity, and diabetes were discussed. (Tr. 216). Plaintiff received treatment on June 18, 2007 for ankle edema, hypertension, and diabetes. (Tr. 219). Plaintiff returned for follow-up on September 25, 2007, April 18, 2008, and May 1, 2008.

---

[3]A chronic metabolic disorder in which the use of carbohydrate is impaired and that of lipid and protein is enhanced. It is caused by an absolute or relative deficiency of insulin and is characterized, in more severe cases, by chronic hyperglycemia, glycosuria, water and electrolyte loss, ketoacidosis, and coma. Long-term complications include neuropathy, nephropathy, generalized degenerative changes in large and small blood vessels, and increased susceptibility to infection. Stedman's at 529.

[4]Lexapro is an antidepressant indicated for the treatment of major depressive disorder. Physician's Desk Reference, ("PDR"), 1175 (63rd Ed. 2009).

[5]Naproxen is a nonsteroidal anti-inflammatory drug indicated for the treatment of osteoarthritis. See PDR at 2632-33.

(Tr. 222-31). Plaintiff's physicians continued to adjust her medications. (Id.). On July 9, 2008, it was noted that plaintiff was not checking her blood sugar levels, and that plaintiff's diet was "poor." (Tr. 232-33). Plaintiff was diagnosed with poorly controlled diabetes. (Tr. 235). Plaintiff was prescribed medication and was instructed to stop consuming sugared drinks. (Id.). On July 23, 2008, it was noted that plaintiff had stopped consuming sugared drinks, was taking her medication as directed, and felt fine. (Tr. 236). Plaintiff was instructed to continue dieting. (Tr. 238).

On October 9, 2008, plaintiff complained of severe pain in her right knee, which limited her activities. (Tr. 259). Upon examination of the right knee, no erythema or edema was noted; plaintiff's right knee was tender to palpation; and plaintiff had limited range of motion of the right knee due to pain. (Tr. 261). A knee x-ray was ordered. (Tr. 262).

Plaintiff underwent x-rays of her right knee on October 10, 2008, which revealed minimal degenerative joint disease. (Tr. 240).

Plaintiff presented to Grace Hill for follow-up on November 12, 2008, at which time plaintiff reported that her knee pain was a ten on a scale of one to ten. (Tr. 263). Plaintiff indicated that her pain was relieved by heat. (Id.). Upon examination, plaintiff's knee was tender with palpation and pain was noted with palpation and flexion. (Tr. 264). Plaintiff was prescribed Tramadol[6] and quad strengthening exercises. (Tr. 265).

Plaintiff presented for follow-up regarding her diabetes, hypertension, and knee pain on February 4, 2009. (Tr. 271). It was noted that plaintiff's knee pain was controlled with

---

[6]Tramadol is a centrally acting synthetic analgesic indicated for the management of moderate to moderately severe chronic pain in adults who require around-the-clock treatment of their pain for an extended period of time. See PDR at 2429.

medication, and that plaintiff was tolerating an increase in her insulin. (Id.). It was found that plaintiff had reached her goal with regard to her hypertension. (Tr. 271). Plaintiff's diet and exercise were described as better. (Tr. 269). Plaintiff's medications were adjusted. (Tr. 271).

Records from St. Charles County Department of Corrections dated November 4, 2009, indicated that plaintiff's speech was pushed and her thought process was circumstantial. (Tr. 302). Counseling was recommended. (Id.). Plaintiff received mental health treatment on five additional occasions from November 2009 through March 2010. (Tr. 297-302).

Plaintiff also received treatment for her diabetes through the Department of Corrections from October 2009 through March 2010, including monitoring of her blood sugar levels on approximately a daily basis. (Tr. 292-352). Plaintiff was given medication, including insulin, for her diabetes. (Id.). Records also indicate that plaintiff refused medical care, including medication and snacks for management of her diabetes, on approximately fourteen occasions. (Tr. 275-94). It was noted that a skin test was positive for tuberculosis,[7] yet a chest x-ray was negative for tuberculosis. (Tr. 372). In a note dated December 4, 2009, a physician stated that plaintiff was receiving treatment for insulin-dependent diabetes and hypertension, and that her condition was satisfactory. (Tr. 321).

Plaintiff presented to the emergency room at Barnes-Jewish Hospital on April 18, 2010, with complaints of weakness in her right arm. (Tr. 367). Plaintiff underwent x-rays of the right arm and shoulder, which did not reveal any fractures. (Id.). Plaintiff was diagnosed with arthritis. (Id.).

---

[7]A specific disease caused by an infection which can affect almost any tissue or organ of the body, the most common site of the disease being the lungs. See Stedman's at 2046.

Plaintiff presented to Grace Hill on August 23, 2010, for evaluation of osteoarthritis in her knees and "pain disproportionate to x-ray findings." (Tr. 373). Plaintiff was referred to an orthopedist. (Id.).

## C.  Records Submitted to the Appeals Council

Plaintiff presented to Barnes-Jewish Hospital on November 29, 2010, with complaints of low back pain. (Tr. 386). It was noted that plaintiff had a history of diabetes mellitus, arthritis of the knees, hypertension, and stroke. (Tr. 391). Upon examination, plaintiff was able to move all of her extremities well, and no edema was present. (Tr. 387). Plaintiff underwent x-rays of the thoracic[8] and lumbar spine, which were negative for fracture or dislocation, but revealed some mild degenerative disc disease.[9] (Tr. 393, 398). Plaintiff was given pain medication, which controlled her pain. (Id.). Plaintiff was diagnosed with lumbar degenerative disc disease. (Tr. 403). Plaintiff was prescribed Naproxen and Hydrocodone,[10] and was discharged. (Tr. 394).

Plaintiff returned to Barnes-Jewish Hospital on December 9, 2010, with complaints of back pain. (Tr. 424). Plaintiff left before being seen by a physician. (Tr. 427).

---

[8]In common terms, the cervical region of the spinal column is the neck; the thoracic region is the main part of the back; and the lumbar region is the lower back. There are seven cervical vertebrae, twelve thoracic vertebrae, and five lumbar vertebrae. The sacrum lies directly below the fifth lumbar vertebra. The coccyx, or tail bone, lies below the sacrum. See J. Stanley McQuade, Medical Information Systems for Lawyers, § 6:27 (1993).

[9]A general term for both acute and chronic processes destroying the normal structure and function of the intervertebral discs. See Medical Information Systems for Lawyers, § 6:201.

[10]Hydrocodone is indicated for the relief of moderate to moderately severe pain. See PDR at 3145.

## The ALJ's Determination

The ALJ made the following findings:

1. The claimant has not engaged in substantial gainful activity since October 21, 2008, the application date (20 CFR 416.971 *et seq.*).

2. The claimant has the following medically determinable impairments: diabetes mellitus, hypertension, degenerative joint disease of the right knee, tuberculosis positive, and obesity (20 CFR 416.921 *et seq.*).

3. The claimant does not have an impairment or combination of impairments that has significantly limited (or is expected to significantly limit) the ability to perform basic work-related activities for 12 consecutive months; therefore, the claimant does not have a severe impairment or combination of impairment (20 CFR 416.921 *et seq.*).

4. The claimant has not been under a disability, as defined in the Social Security Act, since October 21, 2008, the date the application was filed (20 CFR 416.920(c)).

(Tr. 16-20).

The ALJ's final decision reads as follows:

Based on the application for supplemental security income filed on October 21, 2008, the claimant is not disabled under section 1614(a)(3)(A) of the Social Security Act.

(Tr. 21).

## Discussion

### A. Standard of Review

Judicial review of a decision to deny Social Security benefits is limited and deferential to the agency. See Ostronski v. Chater, 94 F.3d 413, 416 (8th Cir. 1996). The decision of the SSA will be affirmed if substantial evidence in the record as a whole supports it. See Roberts v. Apfel, 222 F.3d 466, 468 (8th Cir. 2000). Substantial evidence is less than a preponderance, but enough that a reasonable mind might accept it as adequate to support a conclusion. See Kelley v. Callahan, 133 F.3d 583, 587 (8th Cir. 1998). If, after review, it is possible to draw two

inconsistent positions from the evidence and one of those positions represents the Commissioner's findings, the denial of benefits must be upheld.  See Robinson v. Sullivan, 956 F.2d 836, 838 (8th Cir. 1992).  The reviewing court, however, must consider both evidence that supports and evidence that detracts from the Commissioner's decision.  See Johnson v. Chater, 87 F.3d 1015, 1017 (8th Cir. 1996).  "[T]he court must also take into consideration the weight of the evidence in the record and apply a balancing test to evidence which is contrary."  Burress v. Apfel, 141 F.3d 875, 878 (8th Cir. 1998).  The analysis required has been described as a "searching inquiry."  Id.

### B. The Determination of Disability

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 416 (I) (1) (a); 42 U.S.C. § 423 (d) (1) (a).  The claimant has the burden of proving that s/he has a disabling impairment.  See Ingram v. Chater, 107 F.3d 598, 601 (8th Cir. 1997).

The SSA Commissioner has established a five-step process for determining whether a person is disabled.  See 20 C.F.R. §§ 404.1520, 416.920; Bowen v. Yuckert, 482 U.S. 137, 141-42, 107 S. Ct. 2287, 2291, 96 L. Ed. 2d 119 (1987); Fines v. Apfel, 149 F.3d 893, 894-895 (8th Cir. 1998).  First, it is determined whether the claimant is currently engaged in "substantial gainful employment."  If the claimant is, disability benefits must be denied.  See 20 C.F.R. §§ 404.1520, 416.920 (b).  Step two requires a determination of whether the claimant suffers from a medically severe impairment or combination of impairments.

See 20 C.F.R §§ 404.1520 (c), 416.920 (c). To qualify as severe, the impairment must significantly limit the claimant's mental or physical ability to do "basic work activities." Id. Age, education and work experience of a claimant are not considered in making the "severity" determination. See id.

If the impairment is severe, the next issue is whether the impairment is equivalent to one of the listed impairments that the Commissioner accepts as sufficiently severe to preclude substantial gainful employment. See 20 C.F.R. §§ 404.1520 (d), 416.920 (d). This listing is found in Appendix One to 20 C.F.R. 404. 20 C.F.R. pt. 404, subpt. P, App. 1. If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be impaired. See 20 C.F.R. §§ 404.1520 (d), 416.920 (d). If it does not, however, the evaluation proceeds to the next step which inquires into whether the impairment prevents the claimant from performing his or her past work. See 20 C.F.R. § 404.1520 (e), 416.920 (e). If the claimant is able to perform the previous work, in consideration of the claimant's residual functional capacity (RFC) and the physical and mental demands of the past work, the claimant is not disabled. See id. If the claimant cannot perform his or her previous work, the final step involves a determination of whether the claimant is able to perform other work in the national economy taking into consideration the claimant's residual functional capacity, age, education and work experience. See 20 C.F.R. §§ 404.1520 (f), 416.920 (f). The claimant is entitled to disability benefits only if s/he is not able to perform any other work. See id. Throughout this process, the burden remains upon the claimant until s/he adequately demonstrates an inability to perform previous work, at which time the burden shifts to the Commissioner to demonstrate the claimant's ability to perform other work. See Beckley v. Apfel, 152 F.3d 1056, 1059 (8th Cir. 1998).

**C.     Plaintiff's Claims**

Plaintiff argues that the ALJ erred in finding that plaintiff did not have a severe impairment. Specifically, plaintiff contends that the ALJ erred in evaluating the medical opinion evidence, assessing plaintiff's credibility, failing to properly consider plaintiff's obesity, and failing to develop the record. Plaintiff also argues that the Commissioner erred in failing to consider new and material evidence presented to the Appeals Council. Defendant contends that the ALJ properly found that plaintiff's impairments were not severe.

The ALJ found at step two of the sequential evaluation that plaintiff's medically determinable impairments of diabetes mellitus, hypertension, degenerative joint disease of the right knee, tuberculosis positive, and obesity were not severe. (Tr. 16). Step two of the sequential evaluation process requires a determination of whether the claimant suffers from a medically severe impairment or combination of impairments. See 20 C.F.R §§ 404.1520 (c), 416.920 (c). To qualify as severe, the impairment must significantly limit the claimant's mental or physical ability to do "basic work activities." Id. While the burden is not great, the claimant bears the burden at step two to demonstrate a severe impairment that significantly limits the ability to perform basic work activities. See Mittlestedt v. Apfel, 204 F.3d 847, 852 (8th Cir. 2000); Caviness v. Massanari, 250 F.3d 603, 605 (8th Cir. 2001). Severity is not a "toothless standard," and the Eighth Circuit has upheld on numerous occasions the Commissioner's finding that a claimant failed to make this showing. Kirby v. Astrue, 500 F.3d 705, 708 (8th Cir. 2007). See, e.g. Dixon v. Barnhart, 353 F.3d 602, 605 (8th Cir. 2003); Simmons v. Massanari, 264 F.3d 751, 755 (8th Cir. 2001); Gwathney v. Chater, 104 F.3d 1043, 1045 (8th Cir. 1997); Nguyen v. Chater, 75 F.3d 429, 431 (8th Cir. 1996). The sequential evaluation process may be terminated at

step two when the claimant's impairment or combination thereof would have no more than a minimal effect on the claimant's ability to work. See Simmons, 264 F.3d at 755.

In the instant case, plaintiff contends that the ALJ improperly evaluated the medical evidence in finding that plaintiff's impairments were not severe. Despite plaintiff's claims, the ALJ found that the medical evidence of record did not corroborate plaintiff's allegation of severe diabetes mellitus, hypertension, degenerative joint disease of the right knee, tuberculosis positive, obesity, and history of right upper extremity pain. (Tr. 19). The ALJ noted that the medical evidence of record "documents minimally positive clinical findings that reflect no more than a minimal impact upon the claimant's ability to perform basic work activities, even when her impairments are considered in combination or singly." (Id.). The ALJ's determination is supported by the record.

Plaintiff underwent x-rays of her right knee on October 10, 2008, which revealed only "minimal" degenerative joint disease. (Tr. 240). The ALJ noted that the only abnormal findings noted on examination were edema, tenderness, and limited range of motion of the right knee. (Tr. 19). No other abnormalities were noted, such as erythema, decreased strength, diminished reflexes, or diminished motor function. (Id.). The ALJ noted that plaintiff's knee impairment was treated conservatively with medication and recommended exercises. (Id.). On November 12, 2008, plaintiff reported that her knee pain was relieved by heat. (Tr. 263). In February of 2009, it was noted that plaintiff's knee pain was controlled with medication. (Tr. 271). Finally, the ALJ pointed out that, when plaintiff was incarcerated, she did not report any significant difficulties or pain with respect to her knee or right upper extremity. (Tr. 19).

The ALJ noted that records from Grace Hill dated July 23, 2008 reveal poor control of

plaintiff's glucose levels and hypertension. (Tr. 18, 232-33). The ALJ pointed out that these conditions were treated conservatively with medication, and that plaintiff was advised to modify her diet. (Id.). In February of 2009, it was noted that plaintiff was tolerating an increase in her insulin dosage; plaintiff's diet and exercise were better; and plaintiff had reached her goal with regard to her hypertension. (Tr. 18, 271). In December of 2009, a physician at the Department of Corrections indicated that plaintiff was receiving treatment for insulin-dependent diabetes and hypertension, and that her condition was "satisfactory." (Tr. 321). The ALJ also noted that plaintiff refused treatment for her diabetes on many occasions during her incarceration. (Tr. 18).

With regard to plaintiff's positive tuberculosis test, the ALJ noted that a chest x-ray was negative, and that there is no evidence that plaintiff was symptomatic. (Tr. 19).

Although plaintiff argues that the ALJ failed to properly analyze plaintiff's obesity, the ALJ acknowledged that plaintiff's obesity was a medically determinable impairment. (Tr. 16). The ALJ noted that none of plaintiff's treating providers noted functional limitations or debilitating clinical signs resulting from plaintiff's obesity. (Tr. 19).

The undersigned finds that the ALJ properly evaluated the medical evidence and found that it did not support the presence of a severe impairment or combination of impairments. The medical evidence discussed above does not support the presence of an impairment that would have more than a minimal impact upon plaintiff's ability to perform basic work activities.

In determining that plaintiff's impairments were not severe, the ALJ also performed a proper credibility analysis. "While the claimant has the burden of proving that the disability results from a medically determinable physical or mental impairment, direct medical evidence of the cause and effect relationship between the impairment and the degree of claimant's subjective

- 14 -

complaints need not be produced." Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984). Although an ALJ may reject a claimant's subjective allegations of pain and limitation, in doing so the ALJ "must make an express credibility determination detailing reasons for discrediting the testimony, must set forth the inconsistencies, and must discuss the Polaski factors." Kelley, 133 F.3d at 588. Polaski requires the consideration of: (1) the claimant's daily activities; (2) the duration, frequency, and intensity of the pain; (3) aggravating and precipitating factors; (4) dosage, effectiveness and side effects of the medication; and (5) functional restrictions. Polaski, 739 F.2d at 1322. See also Burress, 141 F.3d at 880; 20 C.F.R. § 416.929.

As discussed above, the ALJ first found that the objective medical evidence does not support plaintiff's subjective complaints. Although the ALJ may not discount subjective complaints solely because they are not fully supported by the objective medical evidence, the lack of supporting objective medical evidence may be considered as a factor in evaluating the claimant's credibility. See Curran-Kicksey v. Barnhart, 315 F.3d 964, 968 (8th Cir. 2003). The ALJ noted that plaintiff was treated conservatively with medication, and neither physical therapy nor injections were prescribed. (Tr. 20). The ALJ also pointed out that no physician placed any restrictions on plaintiff's ability to perform basic work activities. The presence or absence of functional limitations is an appropriate Polaski factor, and "[t]he lack of physical restrictions militates against a finding of total disability." Hutton v. Apfel, 175 F.3d 651, 655 (8th Cir. 1999). In addition, the ALJ noted that no medical evidence supports plaintiff's allegations that she experiences exertional shortness of breath, leg pain that keeps her up through the night, a frequent need to use the restroom, or a need to elevate her legs. (Tr. 19).

The ALJ next stated that there is no evidence in the record that plaintiff's medications

caused side effects. (Tr. 20). The presence or absence of side effects from medications is a proper Polaski factor. See Polaski, 739 F.2d at 1322. The ALJ also pointed out that plaintiff's pain and blood pressure improved with medications and heat therapy. (Tr. 20). Evidence of effective medication resulting in relief may diminish the credibility of a claimant's complaints. See Rose v. Apfel, 181 F.3d 943, 944 (8th Cir. 1999).

Finally, the ALJ noted that the records from the St. Charles County Department of Corrections are replete with instances of noncompliance with diabetic treatment. (Tr. 18). Specifically, on eighteen occasions, plaintiff either refused to take her insulin, eat her meals or snacks, or undergo glucose testing. (Tr. 18, 275-94). Failure to follow a prescribed course of treatment may detract from a claimant's credibility. See O'Donnell v. Barnhart, 318 F.3d 811, 819 (8th Cir. 2003).

An administrative opinion must establish that the ALJ considered the appropriate factors. See Holley v. Massanari, 253 F.3d 1088, 1092 (8th Cir. 2001). However, each and every Polaski factor need not be discussed in depth, so long as the ALJ points to the relevant factors and gives good reasons for discrediting a claimant's complaints. See Dunahoo v. Apfel, 241 F.3d 1033, 1038 (8th Cir. 2001). In this case, the reasons given above by the ALJ for discrediting plaintiff's complaints of disabling pain are sufficient and his finding that plaintiff's complaints are not entirely credible is supported by substantial evidence.

Plaintiff also contends that the ALJ failed to properly develop the record. Specifically, plaintiff contends that the ALJ should have ordered a consultative examination. It is true that the ALJ has a duty to fully develop the record, particularly where a claimant is not represented by counsel. See Driggins v. Harris, 657 F.2d 187, 188 (8th Cir. 1981). This inquiry, however, is

limited to whether the claimant was prejudiced or unfairly treated by the ALJ's development of the record. See Onstad v. Shalala, 999 F.2d 1232, 1234 (8th Cir. 1993). "[A]n ALJ is permitted to issue a decision without obtaining additional medical evidence so long as other evidence in the record provides a sufficient basis for the ALJ's decision." Anderson v. Shalala, 51 F.3d 777, 779 (8th Cir. 1999) (quoting Naber v. Shalala, 22 F.3d 186, 189 (8th Cir. 1994)).

In this case, there was sufficient evidence in the record before the ALJ. The evidence of record, including the medical record and plaintiff's testimony, reveals that plaintiff did not have a severe impairment or combination of impairments. As such, the ALJ did not err in failing to further develop the record.

Plaintiff finally argues that the Appeals Council erred in failing to adequately consider new and material evidence submitted with her request for review. Title 20 C.F.R. § 416.1476(b) provides that "[i]n reviewing decisions based on an application for benefits, the Appeals Council will consider the evidence in the [ALJ] hearing record and any new and material evidence only if it relates to the period on or before the date of the [ALJ] hearing decision." "To be 'new,' evidence must be more than merely cumulative of other evidence in the record." Bergmann v. Apfel, 207 F.3d 1065, 1069 (8th Cir. 2000). "To be 'material,' the evidence must be relevant to [the] claimant's condition for the time period for which benefits were denied." Id. "Where . . . the Appeals Council considers new evidence but denies review, [the Court] must determine whether the ALJ's decision was supported by substantial evidence on the record as a whole, including the new evidence." Davidson v. Astrue, 501 F.3d 987, 990 (8th Cir. 2007).

In its order denying plaintiff's request for review, the Appeals Council indicated that it had received and considered the additional evidence, which were identified as records from Barnes-

Jewish Hospital dated November 29, 2010, and December 9, 2010.  (Tr. 1-2, 4-5).

The records at issue reveal that plaintiff presented to Barnes-Jewish Hospital on November 29, 2010, with complaints of low back pain.  (Tr. 386).  Upon examination, plaintiff was able to move all of her extremities well, and no edema was present.  (Tr. 387).  Plaintiff underwent x-rays of the thoracic and lumbar spine, which were negative for fractures or dislocation, but revealed some mild degenerative disc disease.  (Tr. 393, 398).  Plaintiff was diagnosed with lumbar degenerative disc disease, and was given pain medication, which controlled her pain.  (Tr. 393, 403).  Plaintiff returned to Barnes-Jewish Hospital with complaints of back pain on December 9, 2010, but left before being seen by a physician.  (Tr. 427).

The undersigned finds that the additional evidence submitted to the Appeals Council does not undermine the ALJ's determination that plaintiff's impairments were not severe.  Rather, the evidence reveals that plaintiff suffered from mild degenerative disc disease, and that her pain was controlled with medication.  Considering this additional evidence with the evidence before the ALJ does not lead to the conclusion that the ALJ would have reached a different result, or that the ALJ's decision is unsupported by substantial evidence in the record as a whole.  See Davidson, 501 F.3d at 990.

## Conclusion

Substantial evidence in the record as a whole supports the decision of the ALJ finding plaintiff not disabled because the evidence of record does not support the presence of a severe impairment or combination of impairments.  Accordingly, Judgment will be entered separately in favor of defendant in accordance with this Memorandum.

Dated this 6th day of September, 2012.

                                                                                                           LEWIS M. BLANTON
UNITED STATES MAGISTRATE JUDGE